(No. 90-CC-3153– ▮▮▮▮▮▮)

DONALD McCORMICK, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed March 24, 1992.*

DONALD McCORMICK, *pro se*, for Claimant.

ROLAND W. BURRIS, Attorney General (CHRISTOPHER K. WELLS, Assistant Attorney General, of counsel), for Respondent.

OPINION

Raucci, J.

Claimant seeks damages against the State of Illinois for personal injuries sustained by Claimant on January 23, 1990, when Claimant claims to have been struck in the head and face by welding sparks and some construction steel dropped on Claimant's neck.

Claimant's complaint alleged that he was standing in the cellhouse attempting to speak to the guard concerning a commissary slip, when "fire sparks" started flying through a caged fence striking the Claimant in his hair and on his face. Claimant then alleges that, in an attempt to "get out of the way," Claimant was struck on the head and neck by a heavy steel object causing "great bodily harm." Claimant seeks an award of $100,000.00 for his injuries.

Claimant testified that he was in an area where construction work was taking place when he was struck by an angle iron. Claimant testified he could not see the workmen with their welding gear above the area where he was standing at the time of the incident. Claimant sustained an abrasion upon being struck but did not require sutures. Claimant contended that he presented a grievance to the Institutional Inquiry Board which was denied. Claimant did not appeal to the Administrative

Review Board in Springfield. Further testifying, Claimant contradicted himself by denying having filed a grievance with the Institutional Inquiry Board.

A witness called by the Claimant, Cornell Booth, testified he was helping construct security steel in the south cellhouse. Booth was welding and cutting steel. Booth testified that the area in question was "highly congested." Booth was taking an 8-foot piece of angle iron "through the office" and made a sharp right turn, and struck Claimant in the neck hitting Claimant "a good lick." Booth contended that he had said "watch out." Booth contended that at the time there was welding, torching and sanding taking place. Booth stated that there was an officer present who was taking care of business with inmates near where the construction work was going on. Booth testified that usually "they clear the area," but on the occasion in question the area had not been cleared. Booth testified that when he had said "watch out," there was no way Claimant could have heard him because of the noise.

After the injury, Claimant testified that he was taken to the hospital and remained there until 3:00 or 3:30 in the afternoon. He was furnished with a neck brace shown in place on Claimant's exhibits. Claimant received pain medication and was furnished physical therapy and ultrasound waves and massages. A cat scan was done outside the hospital "a couple of months later" that was negative. Claimant alleged that he was still having pain and difficulties in his lower back and right side. Claimant alleged that he had never been told directly what was wrong with him.

Claimant testified that the area where he was injured was "not secure at all" and that this was "the fault of the workers." Claimant contended that there were no warning signs of work in progress.

On cross-examination, Claimant testified that he did not see the cutting and welding going on.

The complaint alleged in part as follows:

"12. That Claimant has filed a grievance at the Institutional level, but has not been contacted by the Grievance Board."

At one point in Claimant's testimony, he testified as follows:

"Q. Did you present this grievance to the Institutional Inquiry Board, the IIB?

A. Oh, yes, sir.

Q. And what action, if any, did they take on that grievance?

A. Well, they stated that Captain Stanley didn't have any knowledge about it.

Q. So, they denied your grievance?

A. Yes, sir.

Q. Did you appeal to the ARB, the Administrative Review Board, in Springfield?

A. No, sir. I had someone else fill this Institutional Grievance out for me, because I didn't know how to do it myself.

Q. Well, do you know what the Administrative Review Board is?

A. Not really.

Q. On your decision from the local IIB—you know what the IIB is; don't you?

A. No.

Q. Institutional Inquiry Board. Do you know, have you ever filed a grievance with the Institutional Inquiry Board?

A. No. This is my first time here.

Q. How long have you been here?

A. Since '88.

Q. Have you read the rules and regulations regarding grievances?

A. No, sir.

Q. Are you literate? Can you read?

A. Yes; I can read."

It does not appear that Claimant has exhausted his available administrative remedies in compliance with section 790.60 of the Court of Claims Regulations. These

regulations require that any person who files a claim before the Court of Claims shall, before seeking final disposition of his claim, exhaust all other remedies and sources of recovery. (Ill. Rev. Stat., ch. 37, par. 439.24—5; 74 Ill. Adm. Code 790.60.) In *Jane Doe v. State* (1987), No. 85-CC-1739, the Claimant, a patient at John J. Madden Mental Health Center, brought suit against the State after she had been sexually assaulted by another Madden patient. The Claimant, however, did not file an action against her assailant, and as a result, Respondent moved to dismiss the claim for failure to exhaust remedies pursuant to section 25 of the Court of Claims Act, and section 790.60 of the Court of Claims Regulations. Following *Boe v. State* (1984), 37 Ill. Ct. Cl. 72, the Court held that a Claimant "must exhaust *all* possible causes of action before seeking final disposition of a case filed in the Court of Claims." (Emphasis in original). The Court determined that the language of section 25 and section 790.60 "clearly makes the exhaustion of remedies mandatory rather than optional," and that if the Court would have waived the requirement, "the requirement would be transformed into an option, to be accepted or ignored according to the whim of all claimants." Also, see *Lyons v. State* (1980), 34 Ill. Ct. Cl. 268, 271-72.

Like the Claimant in *Essex*, Claimant in this case failed to exhaust all remedies available to him prior to seeking final disposition of his claim in the Court of Claims.

It is therefore ordered, adjudged and decreed that this claim is dismissed, and forever barred.